IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

————————

In the Matter of the Conservatorship of:

**WILLIAM JOHN CHALMERS,**
*An Adult.*

————————

No. CV-23-0263-PR
Filed July 11, 2025

————————

Appeal from the Superior Court in Maricopa County
The Honorable Thomas Marquoit, Judge Pro Tempore
No. PB2017-001373
**AFFIRMED IN PART, REVERSED IN PART, REMANDED WITH
INSTRUCTIONS**

Opinion of the Court of Appeals, Division One
256 Ariz. 271 (App. 2023)
**VACATED**

————————

COUNSEL:

David L. Abney (argued), Ahwatukee Legal Office, P.C., Phoenix, Attorney
for William John Chalmers

Eileen Dennis GilBride (argued), Jones, Skelton & Hochuli P.L.C., Phoenix;
Attorneys for Mike Bogle, Andrew Stone, East Valley Fiduciary Services,
Inc., John McKindles, Ryan Sharber and Brian Theut

————————

JUSTICE BOLICK authored the Opinion of the Court, in which CHIEF JUSTICE TIMMER, VICE CHIEF JUSTICE LOPEZ and JUSTICES BEENE, MONTGOMERY, BRUTINEL (Ret.), and BERCH (Ret.)[1] joined.

_____

JUSTICE BOLICK, Opinion of the Court:

¶1		This case involves petitions for professional fees incurred in connection with a legal guardianship.  We are asked whether failure to file a statement setting forth the basis for fees required by A.R.S. § 14-5109 bars recovery of reasonable and necessary fees.  We conclude it does not.

**BACKGROUND**

¶2		William Chalmers filed for legal separation from his wife.  The action was later converted to a dissolution proceeding.  During the proceedings, Chalmers' attorney asked the court to appoint a guardian ad litem due to his concerns about Chalmers' capacity.  The court appointed Brian Theut as Chalmers' guardian ad litem.

¶3		Theut requested the court to appoint East Valley Fiduciary Services, Inc. ("EVFS") as temporary guardian and conservator.  The court granted Theut's request, and EVFS retained Ryan Scharber to represent EVFS as temporary guardian and conservator and John McKindles to represent Chalmers in the divorce proceedings.  We refer to Theut, EVFS, Scharber, and McKindles collectively as the "Professionals."

¶4		Arizona Revised Statutes § 14-5414 entitles guardians ad litem to recoup fees for their services.  Section 14-5109(A) requires professionals who intend to seek compensation from a ward or protected person's estate to file with the court and distribute to persons entitled to notice a statement "provid[ing] a general explanation of the compensation arrangement and how the compensation will be computed" when the

_____

[1] Although Justice Robert M. Brutinel (Ret.) retired before issuance of this opinion, he participated in oral argument and throughout preparation of this opinion.  Justice King is recused from this matter.  Pursuant to article 6, section 3 of the Arizona Constitution, Justice Rebecca White Berch (Ret.) of the Arizona Supreme Court was designated to sit in this matter.

professional "first appears in the proceeding." The Professionals did not file or distribute a § 14-5109(A) notice.

¶5 During the conservatorship, the Professionals filed numerous applications for fees and costs pursuant to Arizona Rules of Probate Procedure 33. The court approved the initial fee requests, finding that there was "no doubt that the Rule 33 applicants . . . [had] earned the fees."

¶6 The Professionals filed subsequent fee requests, which were pending when a new judge took over the case. Chalmers objected to the Professionals' Rule 33 fee applications, including those that had already been approved. The court held that Chalmers could not challenge the fee applications that had already been approved because doing so "would be an impermissible horizontal appeal" and it was far too late to object to them. However, the court denied the outstanding Rule 33 fee applications, noting that the Professionals "ha[d] already received substantial compensation for their work" and finding their failure to comply with § 14-5109(A) "significant." The court noted that by denying the pending Rule 33 fee applications, the total compensation owed by Chalmers was reduced by almost twenty-five percent.

¶7 Chalmers appealed. The court of appeals held that the prior fee application approvals were not final and that it was not too late for Chalmers to appeal. *Chalmers v. E. Valley Fiduciary Servs., Inc.*, No. 1 CA-CV 21-0163, 2021 WL 5895612, at *2 ¶ 11 (Ariz. App. Dec. 14, 2021) (mem. decision). The court remanded the case to the superior court to determine whether the fee request approvals were "manifestly erroneous or unjust" in light of the Professionals' failure to comply with § 14-5109(A). *Id.* at *3 ¶ 15.

¶8 On remand, the court ruled that the Professionals had waived their right to seek compensation under § 14-5109(A) because of their failure to comply with the statute's notice requirement. The court reasoned that although § 14-5109(A) does not state a consequence for noncompliance with the notice requirement, the forfeiture consequence contained in A.R.S. § 14-5110(A) could be applied to failures to comply with § 14-5109(A). Accordingly, the court found the fee application approvals to be manifestly unjust and ordered the Professionals to forfeit the granted fees back to Chalmers.

¶9            The Professionals and EVFS (through its licensed fiduciaries, Michael Bogle and Andrew Stone) timely appealed. *In re Chalmers*, 256 Ariz. 271, 274 ¶ 12 (App. 2023). In a split opinion, the majority affirmed the superior court's ruling requiring the Professionals to forfeit the fees granted from the initial fee applications. *Id.* at 274–76 ¶¶ 14–24. The court reasoned that § 14-5109(A)'s failure to state a consequence for noncompliance did not vitiate the statute's "unequivocally mandatory" nature. *Id.* at 274 ¶ 14, 275–76 ¶ 21. However, the court held that the initial fee applications could have possibly satisfied § 14-5109(A)'s notice requirement and remanded the issue to the superior court for factfinding. *Id.* at 276 ¶¶ 23–25.

¶10            The dissent argued that although § 14-5109(A) creates a mandatory written notice requirement, noncompliance does not necessarily prevent professionals from recovering reasonable fees and costs. *Id.* ¶¶ 26–27 (Williams, J., dissenting). The dissent reasoned that § 14-5109(A)'s failure to state a consequence for noncompliance was "particularly significant" considering that its neighboring statute, § 14-5110(A), expressly states a waiver consequence for noncompliance. *Id.* at 276–77 ¶¶ 29–30. Put simply, "had the legislature intended to impose such an overarching, automatic procedural bar, it would have done so explicitly—as it plainly did in § 14-5110—not by implication." *Id.* at 277 ¶ 30. The dissent concluded that failure to comply with § 14-5109(A) could be a basis to deny or reduce the amount requested in a fee request, but it is not a basis to require forfeiture of already-granted fees. *Id.* ¶¶ 32–33.

¶11            The Professionals filed a petition for review with this Court. We accepted review of the following issue: whether the lower court erred as a matter of law in reading a waiver/forfeiture provision into § 14-5109 where the legislature chose not to include one. This is an issue of statewide concern. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

¶12            We review questions of statutory interpretation de novo. *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, 19 ¶ 9 (2018). "Statutory interpretation requires us to determine the meaning of the words the legislature chose to use. We do so neither narrowly nor liberally, but rather according to the plain meaning of the words in their broader statutory

context, unless the legislature directs us to do otherwise." *S. Ariz. Home Builders Ass'n v. Town of Marana*, 254 Ariz. 281, 286 ¶ 31 (2023).

¶13        Section 14-5109 is part of title 14, chapter 5 of the Arizona Revised Statutes, titled "Protection of Persons Under Disability and Their Property." Section 14-5109(A) provides that certain professionals who wish to obtain compensation from a protected person, when first appearing in the proceeding, "must give written notice of the basis of the compensation by filing a statement with the court," which "must provide a general explanation of the compensation arrangement and how the compensation will be computed." In turn, § 14-5109(C) provides that such compensation "must be reasonable and necessary," and lists six factors that "may be considered" in making this determination, including "[a]ny other factors bearing on the reasonableness of fees."

¶14        Section 14-5110, titled "Claim deadline for compensation," states in relevant part in subsection A that such a claim "is waived if not submitted to the fiduciary in writing within four months" after providing the service or incurring costs.

¶15        The court of appeals majority held that § 14-5109(A) "explicitly and unambiguously requires notice upon first appearance." *Chalmers*, 256 Ariz. at 275 ¶ 21. Indeed, that provision unquestionably employs mandatory language, providing that a statement "must" be provided and what it "must" contain. *See L.H. v. Vandenberg*, 256 Ariz. 44, 47 ¶ 10 (App. 2023) (noting that the use of "must" or "shall" in a statute connotes mandatory meaning); *see also Garcia v. Butler ex rel. Cnty. of Pima*, 251 Ariz. 191, 195 ¶¶ 15–16 (2021) (describing "shall" as "mandatory language" that "set[s] forth what the court must do").

¶16        But the court of appeals erred by stopping its statutory analysis there. It explained that "[b]ecause [§] 14-5109 is unambiguous, we need not employ the *in pari materia* doctrine[2] to discern its meaning."

_____

[2] *In pari materia* refers to viewing a provision in the broader context in which it appears. *See Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017) ("In construing a specific provision, we look to the statute as a whole and we may also consider statutes that are *in pari materia*—of the same subject or general purpose—for guidance and to give effect to all of the provisions

*Chalmers*, 256 Ariz. at 275 ¶ 18.  The court cited *SolarCity Corp. v. Arizona Department of Revenue*, 243 Ariz. 477, 480 ¶ 8 (2018), for its proposition that courts read a statute's plain language "in context with other statutes relating to the same subject or having the same general purpose, and when that language is unambiguous, [courts] apply it without resorting to secondary statutory interpretation principles."

**¶17**　　　　The court misread *SolarCity* as suggesting that where statutory language is unambiguous, we do not apply the *in pari materia* doctrine.  Rather, the cited *SolarCity* passage directs that we read statutory provisions in context; and then if the language is unambiguous, we do not resort to secondary statutory interpretation principles (such as legislative history).

**¶18**　　　　Context is *always* relevant to statutory interpretation.  If a provision is part of a broader statutory scheme, context can tell us the overall objective.  Context is also essential to avoid rendering other parts of the statutory scheme superfluous.  *State v. Serrato*, 568 P.3d 756, 760 ¶ 16 (Ariz. 2025) ("'In context' means reading statutes as a cohesive whole so that 'no word or provision is rendered superfluous.'" (Quoting *In re Riggins*, 257 Ariz. 28, 31 ¶ 12 (2024))).  Here, § 14-5109 should be read *in pari materia* with § 14-5110 because both address the same subject: the procedure for claiming fees.  The legislature enacted both at the same time and as part of the same bill; both fall under article 1, chapter 5 of title 14, and both concern compensation for court-appointed professionals.  Considering the context here is especially important because § 14-5109(A) is incomplete: it requires an initial statement but specifies no consequence for failure to comply.  Later, in that same section, subsection C mandates that claimed expenses must be reasonable and necessary, setting forth factors a court may consider, including a catch-all for "[a]ny other factors bearing on the reasonableness of fees."

**¶19**　　　　The next section, § 14-5110(A), creates an additional requirement—deadlines for filing fee petitions—and does specify a

involved."); *Collins v. Stockwell*, 137 Ariz. 416, 419 (1983) ("*In pari materia* is a rule of statutory construction whereby the meaning and application of a specific statute or portion of a statute is determined by looking to statutes which relate to the same person or thing and which have a purpose similar to that of the statute being construed.").

consequence for failure to comply: waiver of the claim. Rule 33, which establishes the procedure to seek fees, in turn refers only to § 14-5110, not § 14-5109.

**¶20**        Making sense of the whole requires us to accommodate two principles of statutory construction that appear to be in slight tension here. First is to read statutes so that no provision is drained of effect. *Riggins*, 257 Ariz. at 31 ¶ 12. As the court of appeals majority put it, we should not reduce § 14-5109(A) to a "mere suggestion." *Chalmers*, 256 Ariz. at 275 ¶ 21. But we also read differences in statutory language to indicate differences in meaning. *Workers for Responsible Dev. v. City of Tempe*, 254 Ariz. 505, 511 ¶ 21 (App. 2023) ("when the legislature uses different language within a statutory scheme, it does so with the intent of ascribing different meanings and consequences to that language" (citation omitted)); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 106 (2012) ("[A] change in terminology suggests a change in meaning."). In this statutory scheme, § 14-5109(A) does not contain a penalty for noncompliance, whereas § 14-5110(A) does. As the court of appeals dissent aptly observes, "the *absence* of waiver language in § 14-5109 reflects the *absence* of legislative intent to wholly bar professionals who fail to timely provide § 14-5109 notice when first appearing from subsequently seeking compensation for services rendered under § 14-5110." *Chalmers*, 256 Ariz. at 277 ¶ 30 (Williams, J., dissenting) (emphasis in original).

**¶21**        No textual connection exists between the requirements of § 14-5109(A) and the penalty in § 14-5110(A). That is because they serve different purposes: the first creates a notice requirement to establish the basis for subsequent fees, while the second establishes the precondition to entitlement to fees. We cannot supply such a nexus without rewriting the statute, which we are not authorized to do. *See, e.g.*, Scalia & Garner, *supra* ¶ 20, at 93 ("Nothing is to be added to what the text states or reasonably implies …"); *Silver v. Pueblo Del Sol Water Co.*, 244 Ariz. 553, 564–65 ¶ 41 (2018) (noting that under the omitted-case canon, "a matter not covered is to be treated as not covered" (quoting Scalia & Garner, *supra* ¶ 20, at 93)); *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 255 Ariz. 382, 386 ¶ 18 (2023) (holding that the use of "void" in one provision does not apply to another that does not contain such language); *ACLU of Ariz. v. Dep't of Child Safety*, 251 Ariz. 458, 463 ¶ 20 (2021) (stating that "when the legislature has specifically included a term in some places within a statute and excluded it

in other places, courts will not read that term into the sections from which it was excluded" (citation omitted)); *Lewis v. Debord*, 238 Ariz. 28, 31 ¶¶ 11–12 (2015) (holding that where lien validity is conditioned on compliance with some statutes but not others, the consequence will not be applied to omitted statutes). We can accommodate both statutory interpretation principles and effectuate the statutory scheme as a whole by recognizing § 14-5109(A) as a directory statute; that is, a statute containing requirements but no certain consequence for failure to comply.

**¶22** Directory statutes differ from mandatory statutes in their consequences for not following them. *Dep't of Revenue v. S. Union Gas Co.*, 119 Ariz. 512, 514 (1978). Disregarding a mandatory statute voids the proceedings. *Id.* But the consequence for disregarding a directory statute is a discretionary matter for the judge, and the judge may consider whether the ward or protected person has suffered a detriment from non-compliance. *See id.* (noting that the violation of a directory statute, "without more, such as a showing that the opposing party has suffered substantial detriment, is not sufficient" to void the proceedings); *Forino v. Ariz. Dep't of Transp.*, 191 Ariz. 77, 79, 81 (App. 1997) (finding that failure to comply with directory statute "did not divest the agency of jurisdiction absent any demonstrated prejudice"); *see also Statute*, Black's Law Dictionary (12th ed. 2024) (defining "directory statute" as a "law that indicates only what should be done, with no provision of enforcement").

**¶23** That does not mean that the § 14-5109(A) requirements are mere suggestions. Rather, they require a showing of prejudice through a motion to compel compliance from the aggrieved party and the exercise of the court's inherent authority to remedy the defect, or reference to other applicable statutory remedies. *See S. Union Gas Co.*, 119 Ariz. at 514 (explaining that a court's decision to hold a provision directory rather than mandatory "does not mean it is optional to be ignored at will," but rather "[i]t is only the [e]ffect of non-compliance [where] a distinction arises," which in the case of a directory statute, is discretionary on the part of the trial judge (citation omitted)).

**¶24** Section 14-5109 guides that discretion. If a party objects to the failure to file a statement, the court can rectify it. Similarly, if a professional seeking fees has failed to previously file a statement, the court may properly take the failure to do so into account in determining reasonableness under

§ 14-5109(C), which ensures that professionals cannot reap unjustifiable fees in the event no initial statement is submitted. But failure to file the statement does not leapfrog to waiver of fees, which is a consequence attached to a different statutory requirement: failure to file a request for fees in a timely manner. *See* § 14-5110(A).

¶25 Recognizing discretion in the trial court to rectify the failure to file the statement, short of a complete waiver of fees, gives effect to the entire statutory scheme. Indeed, in this case, the trial court reduced fees it considered excessive, and that determination was not appealed.

¶26 The initial fee awards, to which Chalmers did not object at the time, are not waived by the Professionals' failure to provide an initial statement. Chalmers does not allege he was prejudiced by that failure. A superior court may only reconsider the decision of another superior court judge on a horizontal appeal if "an error in the first decision renders it manifestly erroneous or unjust or when a substantial change occurs in essential facts or issues, in evidence, or in the applicable law." *Powell-Cerkoney v. TCR-Mont. Ranch Joint Venture, II*, 176 Ariz. 275, 278–79 (App. 1993); *Sibley v. Jeffreys*, 81 Ariz. 272, 276 (1956). Under our interpretation of § 14-5109(A), the initial fee awards did not constitute such error. Therefore, the trial court incorrectly entertained a horizontal appeal by vacating the first judge's award of fees.

¶27 However, the subsequent trial court judge denied the objected-to fees because they were unnecessary and unreasonable under § 14-5109(C), given "the large amount of money already paid to these [P]rofessionals for a conservatorship that lasted slightly over a year." Though the court found the failure to file the initial statement "significant," it did not base its fee determination solely on that basis, and therefore did not err as a matter of law. These findings are supported by the record and thus are not clearly erroneous. We therefore do not disturb that ruling.

**CONCLUSION**

¶28 For the foregoing reasons, we hold that the cure for failing to comply with § 14-5109 is subject to the discretion of the court and does not automatically preclude recovery of a claim for compensation under § 14-5110. We therefore vacate the court of appeals' opinion. We affirm the trial court's denial of fees to which Chalmers timely objected, but we

reverse its ruling that the Professionals must disgorge fees previously awarded by the court. We remand to the trial court with instructions to reinstate the first judge's award of fees.